## MERCHANTS AND MECHANICS' BANK OF CHICAGO *v.* HEWITT.

A receipt in the words and figures following: · "1,000 bushels corn. Leclaire, Iowa, June 30th, 1854. Received in store, on account of S. F. Atwood, of Chicago, Illinois, one thousand bushels of good, sound, merchantable shelled corn, to be delivered to his order to the steamboat landing at Leclaire, in gunny sacks, in good order, free of charges. Risk of fire excepted. W. H. Hewitt," is not a negotiable instrument under the laws of this state.

Section 949 of the Code has altered the common law rule, so far as to authorize a suit to be brought upon an unnegotiable instrument in the name of the assignee.

The use of the term "to be delivered to his order," in such an instrument, does not manifest an intention on the part of the maker, to make it negotiable.

Although the instrument, under section 949 of the Code, is assignable by indorsement, and the assignee may sue on it in his own name; yet it is subject to any defence or set-off, legal or equitable, which the maker had against the assignor, before notice of the assignment.

In order to constitute a valid assignment of an unnegotiable instrument of writing, notice must be given to the maker.

Where in an action on an unnegotiable instrument, brought in the name of the assignée, against the maker, the defendant answered, denying all the material averments of the petition, and averred further, that before defendant had any notice of the assignment of the receipt to the plaintiff, the assignor was, and still is, indebted to him in a certain sum, for the corn in the receipt mentioned; that he had no notice of the transfer of the receipt to plaintiff, until the commencement of the suit; that the assignor at the date of the receipt, purchased the corn of defendant, and accepted a draft for the price of the same; and that the draft was protested and never paid; and also claimed the right to retain the corn, until the price of the same was paid; and where, to so much of the answer as set up new matter, the plaintiff demurred, and the demurrer was sustained by the court; *Held,* That the receipt not being negotiable, the plaintiff stood in no better position than the assignor would have stood, had the suit been brought in his name, and that the demurrer was improperly sustained.

Where in an action on an unnegotiable instrument, brought in the name of the assignee, the defendant offered to prove, that his defence to the action as set up in his answer, existed before he had notice of the indorsement of the receipt to plaintiff, and before it was in fact indorsed, which evidence was objected to, and the objection sustained; *Held,* That the evidence should have been admitted.

*Appeal from the Scott District Court.*

THIS is an action by plaintiff, as assignee of the following receipt, to recover of defendant the value of the corn therein mentioned:

" 1,000 bushels corn.      LECLAIRE, Iowa, June 30th, 1854.

" Received in store, on account of S. F. Atwood, of Chicago, Illinois, one thousand bushels of good, sound, merchantable shelled corn, to be delivered to his order, to the steamboat landing at Leclaire, in gunny sacks, in good order, free of charges.   Risk of fire excepted.

W. H. HEWITT."

This receipt was assigned to plaintiff on or about the 27th July, 1854.   Some time between the 8th and 15th October, 1854, the plaintiff demanded of defendant the corn mentioned in the receipt, which defendant refused to deliver.   The receipt was taken by plaintiff, in good faith, in the ordinary course of business, and for a good consideration.

The answer of defendant avers, that before he had any notice of the assignment of the receipt to plaintiff, Atwood was, and still is indebted to defendant in the sum of $450, for the corn in the receipt mentioned, and that he had no notice of the transfer of the receipt to plaintiff, until the commencement of the suit.   The answer further avers, that Atwood at the date of the receipt, purchased the corn of the defendant, and accepted a draft for the price of the same ; and that the draft was protested and never paid ; and defendant claims to retain the corn, until the price of the same is paid to him.   To this answer, the plaintiff demurred, and the court sustained the demurrer.   There was a general denial of plaintiff's right to recover, and of the facts stated in his petition.   Defendant offered no evidence to show that the plaintiff had notice of the facts relied on as a defence to the action, at or before the time plaintiff purchased the receipt of Atwood, but offered to prove that his defence to plaintiff's action, as set up in his answer, existed before

he had notice of the indorsement of the receipt to plaintiff, and before it was in fact indorsed. The plaintiff objected to the evidence, and the court sustained the objection, and defendant excepted. There was judgment for the plaintiff, and defendant appeals.

*Whitaker & Grant*, for the appellant.

The general principle, that the corn receipt was not assignable, even in equity, so as to bar any defence or set-off which the defendant had, prior to notice to him of the assignment, will not, probably, be denied. This warehouse receipt could not be assigned at common law; it is assignable in equity. 2 Story's Equity Juris. § 1040. Subject to all the equities between the parties, before, and at the time when, the debtor has notice of the assignment. Section 1040. And to perfect the assignee's title, he should immediately give notice of the assignment to the debtor, for, otherwise, a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by payment to the assignor, before such notice. 2 Story's Equity Juris. § 1047. Must give debtor notice. Section 1057. Since, until such notice, he is not affected by the trust created by the assignment. "The debtor may, in such case, make all the defences which he might have made, if the suit were for the benefit of the assignor, as well as in his name, provided those defences rest upon honest transactions, which existed between the debtor and the assignor, before the assignment, or after the assignment and before the debtor had notice or knowledge of it." 1 Parsons, 196. The modern English decisions have settled, that in order to constitute a valid assignment of a debt of this kind, notice must be given to the debtor. And if, without such notice, he should pay it to the creditor, he will be protected in it; or if, after an assignment, another, in good faith, should obtain a second assignment, and first give notice of his equity, he will be preferred to the first assignee. The amount of the doctrine is, that the bare assignment of such a *chose in action*, does not pass it away, without notice of the fact to the debtor, who thereby is informed of

the real holder of the debt. *Richards* v. *Griggs*, 16 Missouri, 418; 3 Russell, 1.

The evidence shows, that the draft for the payment of the corn, was protested and returned to Hewitt, and his right to retain the corn as against Atwood, before Atwood had assigned it to the bank. It is true, we cannot show this point on the demurrer, but the plea is, that the draft was protested, and the right of set-off accrued, before the defendant had notice of the assignment. And, as we wish to present the whole case here, we will argue it on the facts as proved. Then, by the general principles of law, Hewitt would have the right to make the same defence against the plaintiffs, as he would have against Atwood. As against Atwood, the defence is a good one. Now, has our Code modified this principle? We think not, but that this principle is expressly recognized. Section 949 says: "Instruments in writing, by which the maker promises to deliver property, are assignable, by indorsement thereon, or by other writing; and the assignee shall have a right of action in his own name, subject to any defence or set-off, legal or equitable, which the maker or debtor has against the assignor, before notice of his assignment." Section 950 provides, "that instruments, by which the maker promises to deliver property, are negotiable instruments, where it is manifest from their terms, that such was the intent of the maker; but the use of the technical words, 'order or bearer,' alone, will not manifest such intent." This instrument is not, under the Code, a negotiable instrument, because there are no terms in the instrument showing the intent of the maker, or that make it manifest, except the technical word, "order," which the Code says will not manifest such intent.

2. Again: this corn receipt merely gave the holder the right to demand of the receipter, the delivery of the corn. *Gardiner* v. *Suydam*, 3 Selden, 357. And, as Hewitt was the vendor of the chattel, he had a right to detain it for the price. If the property be sold for cash, and the price be not paid, or, if it be sold on a credit, and remain in the hands of the vendor, the vendor has a lien on it for the price. 1 Parsons'

Contract, 440. In every sale, unless otherwise expressed, there is an implied condition, that the price shall be paid before the buyer has a right to the possession; and this is a condition precedent. 1 Parsons' Contract, 448. The decision below takes from the defendant his property, without his being paid for it, and there must be some strong rule of equity in favor of some one else, which will justify such a decision.

*Cook & Dillon*, for the appellee.

The material question presented by the record in this case, and the one into which all others resolve themselves, is this: Was the defendant entitled to set up the equities existing between him and Atwood, as a defence to plaintiff's action, he being admitted to be a *bona fide* holder for value, without notice? The discussion of this question, and of the arguments pressed by the counsel for the appellant, necessarily involves a consideration: 1. Of the legal nature and properties of the instrument declared on; 2. Of the general rules of law, aside from the statute, respecting such instruments; 3. The construction of the statute, and particularly of sections 949 and 950, of the Code; and 4. The nature of the defendant's defence, which was held insufficient by the court below, as against the plaintiff.

1. The corn receipt sued on, is one of the ordinary negotiable warehouse receipts, so common in all commercial places. The one in question, states on its face, that the defendant has received for S. F. Atwood, 1,000 bushels of corn, in his store or warehouse; and the defendant agrees to deliver this corn to the order of Atwood, free of all charges, risk of fire excepted. By fair, and almost necessary implication, it appears: 1. That the corn so received was Atwood's; 2. That the defendant received it for him, as a warehouseman; and 3. Agreed to deliver it, not to Atwood, but to his order, expressly making the instrument negotiable.(1) If this instrument is not transferable, ingenuity

---

(1) As to the nature of a warehouse receipt, and the position of warehousemen, see *Suydam, Sage & Co.* v. *Watts*, 4 McLean, 162.

may well be challenged to frame one, that would be so considered. No stronger words or language, indicating an intention that the paper should have a negotiable quality, could well have been used; and its negotiability is entirely consistent with the whole transaction, as stated in the warehouse receipt. The defendant having received in his storehouse, 1,000 bushels of Atwood's corn, it does not matter to him, to whom he shall deliver it, and he undertakes to deliver to the order of Atwood, *i. e.* to the holder of the receipt. It was not intended that no person but Atwood, could demand the corn, or that Atwood should not have the power of transferring the corn, by transferring the evidence of his title to it. Such a construction of these mercantile instruments, would greatly embarrass commercial transactions, and would be directly contrary to the constant usage and practice of merchants.

2. The transferable quality of this instrument, will appear still further, by a recurrence to some general rules of law upon analogous subjects. Some light will be thrown upon this subject by adjudications which have been made upon the rights of parties to bills of lading. "The usual words in a bill of lading, ('To be delivered, &c., unto ——, his order, or assigns,') binding the master to deliver the goods to the person to whom the shipper or consignor shall order the delivery, or to the assignee of such person, enables the person so named, or his assignee, to demand the goods." Flanders on Shipping, § 483. Bills of lading are indorsable by the consignee, and his indorsement to a *bona fide* purchaser, for a valuable consideration, without notice of any adverse interest, passes the property in the goods, against all the world. See *Conrad* v. *Ins. Co.*, 1 Peters, 386; *Nathan* v. *Giles*, 5 Taunt. 558; Flanders on Shipping, § 595. And such transfer of a bill of lading, defeats the vendor's right of stoppage *in transitu*, and transfers the property in the goods. Flanders on Shipping, § 595; see the leading case of *Lickbarrow* v. *Mason*, 1 Smith L. Cases, 388, and particularly the opinion of ASHHURST, J., 396, and BULLER, J., 397. The reasoning of these judges,

applies very forcibly to the questions raised in the case at bar. *Chandler et al.* v. *Sprague*, 5 Metcalf, 308. " Where a man, by his own act, gives a negotiable quality to paper, and suffers it to go into the market, with this transferable quality about it, it does not lie in his mouth to deny the effect of his own words," &c. *Jarvis* v. *Rogers*, 13 Mass. 105 ; 15 Ib. 389 ; *Collins* v. *Martin*, 1 B. &. P. 143.

Another familiar principle of law, would appear to apply with peculiar force, to this case, that is : " that where one of two innocent persons must suffer by the fraud of a third person, the loss ought to fall on him who reposed confidence, and enabled the party to practice the fraud." Paley on Agency, 201 ; Story on Agency, § 56, and cases cited. This sound rule of law is often cited, where it is not appli-cable ; but we submit that it does apply to this case, admit-ting it to stand as stated in the defendant's answer. This principle was applied " as a strong and leading clue to the decision " of *Lickbarrow* v. *Mason*, by J. ASHHURST, 1 Smith's L. C. 396, and by the court, in the decision of *Jarvis, Adm.* v. *Rogers*, 15 Mass. 403.

3. The plaintiff claims that the instrument sued on, falls within the provisions of section 950 of the Code; the de-fendant claims that section 949 of the Code governs. Sec-tion 949 expressly provides for instruments " without words of negotiability," making them assignable by indorsement, or other writing, and giving, subject to a right of set-off in certain cases, a right of action to the assignee, in his own name. Now, as the instrument declared on, does contain ex-press " words of negotiability," it is obvious that it does not come within the class of cases contemplated by section 949. Section 950 makes such instruments as the one sued on, "negotiable, with all the incidents of negotiability, when-ever it is manifest from their terms, that such was the intent of the maker, but the use of the technical words 'order' or 'bearer' alone, will not manifest such intent." This section evidently provides for a different class of instruments than that contemplated by section 949. The one refers to instru-ments " without words of negotiability ;" the other, section

950, to "negotiable instruments, with all of the incidents of negotiability." By section 950, there may be instruments for the "delivery of property" (and such is the one sued on), which are "negotiable, with all the incidents of negotiability," which "incidents" are mainly : 1. The right of an assignee to sue in his own name. 2. His protection, except in certain cases, from any equities between the original parties. We repeat, that if the instrument declared on, be not negotiable by the express terms thereof, we do not see how it could well be made so.

4. The doctrine of vendor's lien has no application to this case, because : 1. To allow this to be set up against a *bona fide* assignee, would be to contradict the terms of the receipt, which, by fair construction, states that the defendant has received the corn of Atwood, in store for him, and agrees to deliver it to his order. 2. A court of law will not take notice of the equitable lien of the vendor, nor assert such rights against a *bona fide* assignee, than whom no party can have superior rights or equities. 3. A fair construction of section 950 of the Code, cuts off any such right as is asserted here. The law of Iowa, where the instrument was made, and the suit pending, governs the rights of the parties, and not the laws of Illinois. If Hewitt had made advances on this receipt, he would probably have done as the plaintiff did, secured himself by obtaining possession of the instrument, which would have prevented any subsequent negotiation of the same.

As to the defence set up, it is nothing more or less than an attempt to set off as against the plaintiff, a debt which the defendant claims is due to him from Atwood, the assignor of the plaintiff, viz : the amount of a protested draft drawn by Atwood in favor of the defendant. The answer does not allege notice to the plaintiff. The fact that Atwood bought the corn of the defendant, does not alter the nature of the defendant's claim. He could set up, in defence, any other claim against Atwood, on the same principle that he offers, as a set-off, this protested bill. Claiming to be *bona fide* assignees, and (in the language of the bill of exceptions),

having taken "said corn receipt in good faith, in the ordinary course of business, and for a valuable consideration," the plaintiffs maintain that the defence is insufficient, without an allegation of notice.

STOCKTON, J.—The important and material question involved in this cause is, whether the receipt sued on is a negotiable instrument, under the laws of this state, and whether the defendant should have been permitted by the court, to make the same defence to it, in the hands of the assignee, that he might have made to a suit brought upon it by the original obligee. Such a receipt was not assignable at common law, so as to authorize suit upon it in the name of the assignee. Our statute (Code, § 949) has altered the common law rule, so far as to allow such a suit. Independent of this provision of the statute, unless Hewitt had assented to the assignment, suit must have been brought in the name of Atwood, for the use of the assignee. Such an action would have been open to all the equitable defences which Hewitt might have made, had the suit been for the benefit of Atwood, as well as in his name, provided those defences rest in honest transactions, which took place between Hewitt and Atwood before the assignment, or after the assignment and before Hewitt had notice or knowledge of it. Parsons on Contracts, 196.

It is claimed by plaintiff, that the receipt is negotiable, under section 950 of the Code; that the corn being deliverable to the "order" of Atwood, the receipt has all the incidents of negotiability. We cannot coincide in this opinion. Such instruments may undoubtedly be made negotiable by agreement of parties, but they are only so under the statute, "whenever it is manifest from their terms, that such was the intent of the maker; but the use of the technical terms, "or order," or "bearer," will not manifest such intent." The corn, in this case, was to be delivered to the "order" of Atwood. These words, however, unaccompanied with any other evidence of an intent to make the receipt negotiable, are not sufficient to give it the character and incidents of ne-

gotiability. Our conclusion is, that as it is not manifest from the terms of the receipt, that it was the intention of Hewitt to make it negotiable, although under section 949 of the Code, it is assignable by indorsement, and the assignee may sue on it in his own name, yet it is subject to any defence or set-off, legal or equitable, which Hewitt had against Atwood before notice of the assignment. In order to constitute a valid assignment of an instrument of writing like the present, notice must be given to the maker. If without such notice, the maker deliver the property to the assignor, he will be discharged. And if after assignment, another person obtain a second assignment, and first give notice of his equity, he will be preferred to the first assignee. Parsons on Contracts, 196; *Richards* v. *Griggs*, 16 Missouri, 418; *Dearle* v. *Hall*, 3 Russell Ch. 1; 2 Story's Eq. Jurisprudence, §§ 1047, 1057.

The defendant avers in his answer, that until the commencement of the suit, he had no notice of the assignment of the receipt to plaintiff; and before he received such notice, Atwood was, and still is, indebted to defendant, in the sum of four hundred and fifty dollars, for the price of the corn; that he has never received payment from said Atwood nor any other person; and that the corn is still in his possession, where it had been since the execution of the receipt, and he claims the right to retain it, until he is paid the price of the same. To this answer, a demurrer was sustained. If it is permitted to Hewitt, to make the same defence to the action by the assignee to recover the value of the corn, that he might have made to a suit on the receipt by Atwood, we cannot resist the conclusion, that the demurrer was improperly sustained. The receipt not being negotiable, the plaintiff stands in no better position than Atwood would have stood in, if he had sued Hewitt on the receipt. In such an action, then, would Hewitt's answer have been a good defence? It will be remembered, that there had been no delivery of the corn. It still remains in the warehouse of Hewitt. Atwood had accepted a draft for the price of the corn, which was protested, and never

paid. If property is sold for cash, and the price be not paid; or if it be sold on a credit, and remain in the hands of the vendor, the vendor has a lien on it for the price; and only payment or tender, gives the vendee a right to possession. 1 Parsons on Contract, 440. Demand on Hewitt for the corn was not made until October; and as Atwood had not, in the meantime, paid the price of it to Hewitt, and the corn had all the time remained in his possession, Hewitt was entitled to retain the corn until he was paid for it, according to agreement. This answer, then, would have been good in a suit by Atwood against Hewitt, and is equally good in any suit by Atwood's assignee. We conclude, therefore, that the demurrer to the answer was improperly sustained, and the evidence offered by defendant should have been received.

We have carefully considered the arguments of plaintiffs' counsel, based upon the analogy between this receipt, and an ordinary bill of lading. We see no good reason to change our views of the subject presented above. A bill of lading is the contract of the master of a vessel, to deliver the property to the person to whom the consignor or shipper shall order the delivery. It is transferable by indorsement, and the property passes to the assignee. This is the result of well settled principles of the commercial law. The doctrine predicated of bills of lading, by the defendant's counsel, is undoubtedly correct in all questions arising between the consignor or shipper, and the consignee or his assignees. But in an action against the master of a vessel, or obligor in the bill of lading, for the non-delivery of the goods, other principles must govern, and the right of the parties must be regulated by the Code; and we are unable to give its provisions any other interpretation than such as will allow to the maker of the corn receipt, every legal and equitable defence in a suit by the assignee, which he might make in a suit, in the name of the original payee.

Judgment reversed.