FARMERS' & MERCHANTS' BANK OF CLAY CENTER v. FARWELL et al.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1893.)

No. 312.

1. ASSIGNMENT—RIGHT OF ASSIGNEE.

One who, being indebted to a bank, and also to a firm, had assigned to the latter his interest in certain fire insurance policies, prosecuted actions thereon in his own name, testifying that he was solely interested therein. Previously, he had refused to assign the policies to the bank, but informed its officers that when he collected the money he would deposit it, and the bank could pay itself; and the bank, having no knowledge of the assignment, and relying on these statements, granted him further credit, and made him other loans. Subsequently, after a settlement of certain of the actions, the attorney for the assignor, without his knowledge, or that of the assignees, deposited the proceeds in the bank. *Held* that, by the assignment, the entire beneficial interest in the policies vested in the assignees, and entitled them, as against the bank, to the proceeds of the settlement.

2. SAME—FAILURE TO GIVE NOTICE OF ASSIGNMENT—ESTOPPEL.

The assignees were not estopped to claim the money because of their failure to give notice of the assignment, nor for allowing the prosecution of the actions in the assignor's name, as they had no knowledge of the assignor's indebtedness to the bank, or that the latter intended to extend his credit.

Appeal from the Circuit Court of the United States for the District of Kansas.

In Equity. Suit by John V. Farwell, Charles B. Farwell, John K. Harmon, John T. Chumasero, and John V. Farwell, Jr., doing busi-

ness under the firm name of John V. Farwell & Co., against the Farmers' & Merchants' Bank of Clay Center, Kan., to recover proceeds of insurance policies, as assignees thereof. Decree for complainants. Respondent appeals. Affirmed.

Statement by SANBORN, Circuit Judge:

H. L. Frishman, a merchant in Clay Center, in the state of Kansas, sustained a loss by fire March 3, 1888. He held nine policies of insurance against this loss, issued by nine insurance companies. In the summer of 1888 he commenced actions against these companies upon these policies, and they remained pending until 1891. At the time of the fire he owed the appellant, the Farmers' & Merchants' Bank of Clay Center, Kan., $3,000, but before November 23, 1888, he had reduced this indebtedness to $2,200. At the time of the fire he owed the appellees, John V. Farwell & Co., $4,000, and on November 23, 1888, he owed them $11,000. On that day he made a written assignment of his interest in the insurance policies, and in the moneys to be derived from them, to the appellees, to secure his indebtedness to them. This assignment was not filed in any court, but was delivered to one of the attorneys of Farwell & Co. Subsequent to this assignment, Frishman testified, in the trial of the actions against the insurance companies, which were prosecuted in his name, that he was the owner of the policies, and that no one else was interested in them, and this fact was known to the officers of the bank. Frishman informed some of these officers after the assignment that he could pay his debt to the bank when he collected the money on these insurance policies, that this money would be deposited with their bank, and that they could then pay the bank out of it. In reliance upon these statements, they permitted Frishman to renew his notes to the bank repeatedly; allowed him on one occasion to take up an indorsed note with his own note, without indorsement, and loaned him some more money; so that he owed the bank $3,500 on March 19, 1891, all of which was past due. The bank officers knew that Frishman was indebted to Farwell & Co., but did not know that he had assigned the policies to them. They had demanded an! assignment of the policies to the bank, but he had refused to make it. Farwell & Co. did not know that Frishman was indebted to the bank, nor that he had testified that he alone was interested in the policies, nor that he had made the representations recited to the bank. The attorneys who prosecuted the actions against the insurance companies were employed by Frishman, and were not advised of the assignment to the appellees. One of these attorneys, on March 19, 1891, settled certain of these actions, and collected $3,480.19, which, without the authority or knowledge of Frishman, he deposited to the credit of Frishman in this bank. On the same day the bank charged the indebtedness of Frishman to it against this credit. Frishman and Farwell & Co. immediately notified the bank that the money so deposited was the property of the latter, under the assignment, and Farwell & Co. brought this suit in the court below, and obtained a decree for its recovery. This decree is challenged by this appeal.

F. B. Dawes, (Dawes & Durrin, on the brief,) for appellant.

Charles Blood Smith, (W. H. Rossington and Clifford Histed, on the brief,) for appellees.

Before CALDWELL and SANBORN, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

A bank has a lien on the moneys or funds of a depositor to secure his overdue indebtedness to it, and may at once apply these funds to the payment of such a debt. The foundation of this lien is the mutual relation of the parties. The depositor owes the bank for money he may have borrowed, and his debt is due. The bank owes the depositor for moneys he has deposited, and that debt is due. If

the depositor brings an action for the amount of his deposit, the bank can, of course, set off the past-due debt he owes it, and the balance only can be recovered. The lien of the bank upon moneys deposited with it—the right of the bank to charge the overdue debt of its depositor against his deposit—is based upon this right of set-off, and is coextensive with it. It is essential to its existence that each of the parties should be a debtor to the other, and that each of the debts should be due. Not only this, but, as against third parties, the indebtedness of the bank that becomes subject to this right of lien must have arisen from the deposit of moneys or funds that belonged to the depositor himself. He cannot, by depositing moneys of others intrusted to his care, pay his own debt to the bank, or enable the bank to do so. In the absence of fraud or gross negligence on the part of third parties, the bank has no higher right or better title to their moneys intrusted to its depositor than the depositor has himself. It is met here by the rule that equity will follow moneys held in a fiduciary capacity as far as they can be identified, and restore them to the beneficial owner of them. If they are deposited in the bank by a trustee, agent, factor, or bailee, even if they are mingled with his own money, they do not become his property, and the bank stands in the shoes of its depositors. It must pay the money to the true owner. Pennell v. Deffell, 4 De Gex, M. & G. 372, 383; Knatchbull v. Hallett, (In re Hallett's Estate,) 13 Ch. Div. 696, 710, 719; Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 67, 68; Bank v. King, 57 Pa. St. 202, 209; Van Alen v. Bank, 52 N. Y. 1; Manningford v. Toleman, 1 Colly. 670; Murray v. Pinkett, 12 Clark & F. 764, 785; Jordan v. Bank, 74 N. Y. 467, 472; Falkland v. Bank, 84 N. Y. 145, 149, 150. In Pennell v. Deffell, supra, Lord Justice Knight Bruce said:

"When a trustee pays trust money into a bank, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust, as much and as effectually as the money so paid would have done, had it specifically been placed in a particular depository, and so remained."

In Murray v. Pinkett, supra, the trustee of certain bank shares, which stood in his own name on the books of the bank, borrowed £4,000 of the latter upon his agreement to pledge the shares as security for the loan. In summing up the case the lord chancellor said:

"Then here are two equities; that is to say, here is a trustee of the property, which he held for the benefit of the cestuis que trustent, endeavoring to create an equity upon that property to secure his own debt. Which of these two equities is to prevail? Undoubtedly, the former."

In Bank v. King, supra, a collector of rents deposited moneys of his principal in a bank in his own name. It was attached by a creditor of a depositor, and the principal immediately gave notice of his ownership. It was held that the attaching creditor stood in the shoes of the depositor, and could recover only what the depositor could.

·The case before us is stronger than any we have cited, because these moneys were never deposited with the bank by the trustee, or with his consent. Thèy were deposited by a mistake of his attorney, and without his knowledge or authority. The entire beneficial interest in the insurance policies, and in the moneys collected from them, as against Frishman, vested in Farwell & Co. by his assignment to them in 1888. They were intrusted to him to collect for their benefit. If, after he had collected their proceeds, he had deposited this money with the bank, with the intent to thus apply it to the payment of his own debt to the latter, he would have been guilty of a gross breach of trust, if not of a more serious offense. By mistake, and without his knowledge, these moneys of Farwell & Co. were deposited with this bank. It is the province of a court of equity to enforce trusts and to correct mistakes. The decree below corrected the mistake of the attorney who deposited this money, and enforced the trust under which it was collected. It directed that the money should be paid to the beneficial owners. To reverse it would be to enforce a mistake, and to compel the breach of a trust.

But it is said that Farwell & Co. are estopped to claim this money because they concealed the assignment, and peimitted Frishman to appear as the owner of the policies, and he, by his testimony that he alone was interested in them, in the trial of the actions against the insurance companies, and by his representations to the bank, induced it to extend the time of payment of his debt, to surrender the security of an indorser, and to increase its loan. This position is untenable: First. It is the province of a court of equity to correct mistakes. Equity considers that as done which ought to have been done. The money in dispute must be treated as though the attorney of Frishman had never made the mistake of depositing it in the bank, but had paid it to Frishman, as it was his duty to do. Farwell & Co. would then have had the promise of Frishman to pay this money to them, supported by the legal title evidenced by their assignment and the possession in their trustee, while the bank would have had the bare promise of Frishman to violate his trust and pay the money to it. Where equities are equal the legal title prevails, and the bank could never have maintained any claim to this fund. Second. An essential element of such an equitable estoppel as will defeat a legal title is a willful intent to deceive, or such gross negligence of the rights of others as is tantamount thereto. There must be either some moral turpitude or some breach of duty. We find no evidence of anything of this kind in this record. There is some evidence that Farwell & Co. and Frishman agreed that they would not give notice of the assignment while the suits were pending because they thought they could be more successfully prosecuted by Frishman than by Farwell & Co. To prosecute them in the assignor's name was a right expressly given to them by the statutes of Kansas, which provide that in case of any such transfer of interest the action may be continued in the name of the original parties, or the court may allow the person to whom the transfer is made to be substituted in the action. 2 Gen. St. Kan. 1889, par. 4117. At common law a

chose in action not founded on a negotiable instrument is not assignable, so as to give the assignee a right to sue in his own name. The action must be brought in the name of the original owner. There was nothing in this agreement, or in the prosecution of these actions in Frishman's name, evidencing any intent on the part of Farwell & Co. to deceive the bank, or to give a delusive credit to Frishman. They did not know that he was indebted to the bank, or that the bank intended to give him credit.

The case of Burnett v. Gustafson, 54 Iowa, 86, 6 N. W. 132, is cited by counsel for appellant in support of his contention. In that case the owner of certain cattle in Iowa gave a chattel mortgage upon them, and it was duly recorded in the proper office. The mortgagee permitted him to remove the cattle from Iowa to Chicago, and to sell them there in his own name. He received the proceeds. He deposited them in a bank in Chicago to the credit of his own bank in Iowa. The bank in Iowa passed these proceeds to his individual credit, where they remained for several weeks, until one of his notes to the bank, for $1,000, fell due. He then drew a check on the bank for the amount of his note, payable to the latter out of this deposit, and the bank paid it, and surrendered the note. Subsequently, the mortgagee of the cattle claimed to recover the amount of this check from the bank. It is evident that there is a clear distinction between this case and the one at bar. In the former the mortgage, by its terms, covered the cattle only, and gave no authority to the mortgagor to sell them, or to receive or dispose of the proceeds for the benefit of the mortgagee. In the latter the assignment expressly covers the policies, and the moneys to be collected on them, and Frishman was expressly authorized to receive the money, and pay it over to the assignees. In the former case the moneys were deposited by the mortgagor himself, and they were applied by his own act to the payment of his debt to the bank. In the latter they were deposited by mistake by another, and they were seized by the bank without the consent of Frishman. It might well be held in the Iowa case that the bank was authorized to presume that the mortgage lien had been discharged, or that, if it had not, the mortgagee would follow the cattle, and not their proceeds. But there is no warrant for any such holding on the facts of this case. Undoubtedly, if the insurance companies paid Frishman in reliance on his apparent title, Farwell & Co. would be estopped to demand a second payment to themselves. This is because they knew that the natural and probable consequence of their silence would be such a payment to Frishman, and hence it became their duty to give notice to the companies of their assignment, if they intended to demand payment to themselves. Again, if, while he held possession of the policies, and was prosecuting the actions upon them in his own name, Frishman had assigned his claim against the companies to the bank or to a third person for value, and without notice of the prior assignment, and the subsequent assignee had first given notice to the insurance companies of his assignment, Farwell & Co. would have been estopped to claim the proceeds of the policies

as against such an assignee. To this effect are Dearle v. Hall, 3 Russ. 1; Spain v. Hamilton, 1 Wall. 604; and Judson v. Corcoran, 17 How. 614. And they rest upon the rule that where one of two innocent parties, holding titles of equal apparent validity, must suffer through the fault of a third, that one must bear the loss who has put it in the power of the third to commit the fraud. In Williams v. Thorp, 2 Sim. 570, and in Ex Parte Colvill, 1 Mont. Bankr. Cas. 110, it was held that the assignee of an insurance policy, who had given no notice to the company of his assignment, could not recover a fund which had been collected by the assignee in bankruptcy of the original assignor under a subsequent assignment. But these cases are far from holding that, if the original assignor had collected the money on the insurance policies, the courts would compel him to violate his trust, and turn it over to his general creditors. If Farwell & Co. had been informed that the bank was about to give credit on the faith of Frishman's apparent title, and had then represented it to be good, or if the assignment they received had been subject to such registry statutes as commonly govern deeds and chattel mortgages, and they had kept it from the registry with the intent to give the assignor a delusive credit, an estoppel might have arisen, because in each of these cases they would have failed to perform a plain duty. To this effect are Hilliard v. Cagle, 46 Miss. 309; Hafner v. Irwin, 1 Ired. 490; Hildeburn v. Brown, 17 B. Mon. 779; and Anderson v. Armstead, 69 Ill. 452.

These cases to which we have referred in the discussion of this question of estoppel are cited by counsel for the appellant in support of their contention. In each of them there was some evidence of moral turpitude, or of such negligence of the rights of others as was tantamount to a breach of duty, but in the case at bar there is nothing of this character. Farwell & Co. trusted Frishman, as they had a right to do, to prosecute these suits and collect this money for them. They trusted him to do it in his own name, and the sequel has proved that their faith was well founded. He did not assign the policies to another, but he refused to do so. He did not appropriate the money he collected to his own use, or to the use of other creditors; but when the bank undertook to do so, by taking advantage of a mistake committed by another, he immediately notified its officers that the money belonged to Farwell & Co. Farwell & Co. never knew that Frishman owed the bank, or that it was extending credit to him on the faith of his ownership of these policies, while the officers of the bank did know of Frishman's indebtedness to Farwell & Co. To create an estoppel, there must be knowledge, actual or constructive, by the party making the representation or the concealment, that the other party intends, or is likely, to act upon it. Andrews v. Lyons, 11 Allen, 349. No statute has been called to our attention which authorized or required the registration of this assignment in order to give it validity against creditors of the assignor, and we know of no rule of law which required these assignees to give unknown creditors of their assignor notice of their assignment in order to

protect themselves against the claims of the latter; nor do we know of any method by which they could have effectually given such a notice. Mr. Justice Field, in delivering the opinion of the supreme court in Henshaw v. Bissell, 18 Wall. 255, 271, declared "that there must be some intended deception in the conduct or declaration of the party to be estopped, or such gross negligence on his part as to amount to a constructive fraud," to warrant the application of the doctrine of equitable estoppel. As there was no knowledge on the part of Farwell & Co., and no reasonable ground to anticipate that the bank intended to act, or was acting, on the faith of Frishman's apparent title to the policies, there could have been no intent on their part to induce it to so act. It was no breach of duty on their part to fail to notify the bank of the assignment, because they did not know, and could not anticipate, that it would act upon Frishman's apparent title, and negligence that does not amount to a breach of duty does not constitute constructive fraud, and is not sufficient to raise an estoppel. Henshaw v. Bissell, supra; Brant v. Iron Co., 93 U. S. 326, 336; Copeland v. Copeland, 28 Me. 525, 540; Hill v. Epley, 31 Pa. St. 331, 334; Com. v. Moltz, 10 Pa. St. 527, 531; Zuchtmann v. Roberts, 109 Mass. 53; Boggs v. Mining Co., 14 Cal. 279, 368; Davis v. Davis, 26 Cal. 23. The decree below is affirmed, with costs.