HESS & SKINNER ENGINEERING CO. et al. v. TURNEY et al. (No. 5811.)

(Court of Civil Appeals of Texas. Austin. Oct. 31, 1918. On Motion for Rehearing Dec. 11, 1918.)

1. ASSIGNMENTS ☞52—EQUITABLE ASSIGNMENT OF WAGES.

An agreement whereby merchants were to furnish to laborers goods for which their employers were to pay from wages due amounted to an equitable assignment of the claims for wages.

2. PRINCIPAL AND SURETY ☞115(1)—ACTS CONSTITUTING RELEASE OF SURETY—LOSS OR SURRENDER OF SECURITIES.

The rule that the release by creditor of securities held by him for the payment of an obligation for which the surety is liable operates to discharge and release the surety to the value of the securities released does not apply to a surety engaged in suretyship for profit, not injured by such transaction.

3. ASSIGNMENTS ☞52 — SUBROGATION ☞23(8)—ADVANCES—LIABILITY ON CONTRACTOR'S BOND.

A transaction by which a bank loaned money to contractors for payment of wages due laborers, which money was so used, held not to constitute an equitable assignment of labor debts, nor subrogate the bank to the laborers' claims against contractor's surety.

4. EQUITY ☞60 — PRIORITY OF EQUITIES — EQUALITY.

As between persons having equitable interests, the rule "Qui prior est tempore potior est jure," applies only where the equities are equal.

5. ASSIGNMENTS ☞85 — PRIORITIES — EQUITIES.

Assignment by bridge-building contractor of balance retained by county on his contract, to bank, to secure its advance of a sum which contractor used to pay laborers' wages, was superior in equity to prior assignment of the same fund to contractor's surety to secure it against liability on its bond, which had been previously executed, since surety parted with nothing of value as consideration for the assignment.

6. ASSIGNMENTS ☞85—PRIORITY.

In order that a prior assignment may have precedence over a subsequent assignment, notice of former assignment must have been given to the holder of the fund prior to the subsequent assignment.

7. ASSIGNMENTS ☞52—EQUITABLE ASSIGNMENT OF WAGES.

An agreement by which laborers were paid partly in cash and partly in board, but not showing that the laborers agreed that any part of their wages should be paid for groceries, or that they knew such were bought from claimant, does not constitute an equitable assignment of laborers' wages to claimant.

8. COUNTIES ☞123—CONTRACTOR'S BOND—LABOR AND MATERIAL—TOOLS.

A scraper and paint brushes furnished a contractor were tools, and were neither labor nor material used in the construction of a bridge, for which contractor's surety would be liable.

9. COUNTIES ☞123 — CONTRACTOR'S BOND — LABOR AND MATERIAL—FUEL FOR ENGINE.

Wood furnished as fuel for an engine used by a bridge contractor in hoisting steel, and for repairs of tools and hauling material from railroad to river, were items for "material used and labor performed" in the prosecution of the work, under the contract, for which contractor's surety would be liable.

10. COUNTIES ☞123—CONTRACTOR'S BOND—LIABILITY—LABOR AND MATERIAL.

Where a contractor, in constructing a bridge, in order to facilitate work, had laborers take their meals in camp instead of going into town for them, the labor in cooking such meals was labor performed in the prosecution of the work, and for such the contractor's surety would be liable.

On Motion for Rehearing.

11. PRINCIPAL AND SURETY ☞101(2)—DISCHARGE OF SURETY — ALTERATION OF CONTRACT.

The law in reference to releasing a surety by reason of a change in the construction contract, which surety guaranteed, has no application to change in the contract between contractor and subcontractor, thereafter made, where there was no resultant injury to the surety.

Appeal from District Court, Bastrop County; Ed R. Sinks, Judge.

Suits by M. M. Turney and by the Lion Bonding & Surety Company and others

against Bastrop County and others were consolidated and tried together. From a judgment therein rendered, the Lion Bonding & Surety Company appeals. Hearing, after answer, by Supreme Court to questions certified. 203 S. W. 593. Judgment reformed.

A. B. Wilson, of Houston, for appellant Lion Bonding & Surety Co.

Page & Jones and Maynard & Maynard, all of Bastrop, Duncan & Burleson, of La Grange, S. L. Staples, of Smithville, and N. A. Rector, of Austin, for appellees M. M. Turney and others.

Jno. T. Duncan and A. Burleson, both of La Grange, and S. L. Staples, of Smithville, for appellees Mrs. Tomlin and others.

## Findings of Fact.

JENKINS, J. 1. On April 29, 1914, Hess & Skinner Engineering Company, hereinafter referred to as the contractors, entered into a contract with Bastrop county for the construction of a bridge across the Colorado river for the sum of $45,000, to be paid as the work progressed, 15 per cent. of which was to be retained by the county until the completion of the bridge. The bridge was completed according to contract, and the county paid therefor, except the sum of $6,-854.23, which amount it tendered into court for the benefit of those who might be entitled to the same.

2. At the time of the execution of said contract the contractors gave bond as required by the Acts of the 33d Legislature, c. 99, p. 185 (Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f et seq.), with the Lion Bonding & Surety Company, hereinafter referred to as the bonding company, as security. By the terms of this bond the bonding company bound itself for the completion of the bridge according to the contract, with the additional obligation that such contractors "shall promptly make payments to all persons supplying them with labor and (or) materials in the prosecution of the work provided for in such contract." The statute gives the right to sue on this bond to any person having such unpaid claim, and requires all such persons to intervene in any such suit when brought.

3. On April 30, 1914, the contractors, for the purpose of indemnifying the bonding company against any amount for which it might become liable on its bond, gave to said company a written assignment of the 15 per cent. of the contract price of the bridge to be retained by the county.

4. The Vincennes Bridge Company, hereinafter referred to as the bridge company, furnished the steel for the erection of the bridge. On August 25, 1914, the contractors, for the purpose of securing the bridge company for any amount that they then owed, or might thereafter owe, to said company, gave it a written assignment of its contract with the county.

5. In February, 1914, the contractors borrowed from the First National Bank of Smithville, hereinafter referred to as the bank, $1,500, and as security therefor gave the bank an order on the county for that amount to be paid out of the money to become due them on said contract. This order was properly presented to the county judge of Bastrop county, and was accepted by him. It would have been paid but for the fact that he was enjoined by appellant from making such payment.

6. At the time the assignment was given to the bank neither it nor Bastrop county, nor the county judge, had any notice of the assignment by the contractors to appellant.

7. During the progress of the work on the bridge certain local merchants, the contractors, and the laborers entered into an agreement whereby the merchants were to furnish the laborers goods. The contractors were to pay for the same out of wages due and to become due such laborers, and deduct the amount of such payments from the wages of said respective laborers.

8. Appellants brought suit to enjoin the county from paying out any of the funds due on the contract to the bank or to the bridge company. M. M. Turney brought suit to recover the amount due him from the county, and the bonding company and other appellees intervened in said suit. The two suits were consolidated and tried together.

9. The case was tried before the court without a jury. Judgment was rendered against appellant for Turney and for all of the interveners, 38 in number, for the respective amounts shown in the judgment of the court, except W. C. Moore, Falkenberg Drug Company, and Alamo Ironworks, and foreclosing their lien on the money in the registry of the court.

10. The court filed its findings of fact herein, which we approve; but as they are very lengthy, rendered so by the number of the parties herein and the finding as to each claim, we do not deem it necessary to set out such findings of fact. We think that our findings of fact as herein set out, together with such additional facts as are stated in the opinion herein, are all that are necessary to an understanding of the issues here involved.

11. Appellant, Lion Bonding & Surety Company, only appealed from the judgment rendered.

## Opinion.

This case was tried before the court without a jury. Appellant filed a motion for a new trial. It did not copy any part of its motion for a new trial as assignments of error, but filed assignments independent of such motion. Appellees objected to the consideration of these assignments. We certified to the Supreme Court the question whether or not the assignments herein should be

considered, and that court answered in the affirmative. The question was certified under the style of Hess & Skinner Engineering Company v. M. M. Turney et al.

[1] R. E. Hoppe recovered judgment for goods sold to laborers, under the circumstances, as local merchants, mentioned in our seventh finding of fact, supra, for the amounts due him, with the right of pro rata participation of the funds in the registry of the court. In this there was no error. The transaction mentioned in said finding of fact amounted to an equitable assignment to him of the claims of the laborers. McIlhenny v. Binz, 80 Tex. 20, 13 S. W. 655, 26 Am. St. Rep. 705.

[2] One of the appellees herein is the bridge company. At one of the periodical settlements between the county and the contractors it was found that the county was due the contractors $16,149.80. There were present at this settlement one of the contractors, the county judge, an agent of the bridge company, and a representative of all of the local merchants. There was then due the local merchants, under the agreement referred to in the seventh finding of fact, supra, the sum of $6,499.80. The representative of the local merchants objected to any of this sum being paid to the contractors. It was then agreed by all parties that the county should issue to the contractors two warrants, one for the sum of $6,499.80, which should be immediately indorsed by the contractors to the representative of the local merchants, and the other for the balance, $9,650. This was done, and the warrant for $6.499.80 was collected by the representative of the merchants, and the proceeds was paid to them.

In connection with these facts, appellant submits the following proposition:

"Where a creditor releases the securities held by him for the payment of an obligation for which a surety is liable, the release of said securities operates to discharge and release the surety, at all events to the extent of the value of the securities released."

This proposition, under the facts ordinarily existing in suits against sureties, is too well established to require citation of authorities in its support. The bridge company, by its agreement and indorsement of the $6,499.80 warrant to the merchants, released security which it had the right to retain by virtue of the assignment to it, as stated in our fourth finding of fact, supra.

To the above proposition there should be added, under the facts of this case, the following:

Where, however, a surety is engaged in the business of suretyship for profit, and it appears that he was not injured by such release, he will not be discharged thereby, in whole or in part. Rule v. Andrews, 160 Mo. App. 347, 142 S. W. 358; U. S. Fidelity Co.

v. United States, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; People v. Bowen, 187 Mich. 257, 153 N. W. 672.

It is stated in the note to Hormel v. Bonding Co., 33 L. R. A. (N. S.) 513, that the overwhelming weight of authority supports the proposition that the rule of strictissimi juris, by which the rights of uncompensated sureties are determined, is not applicable to the contracts of surety companies, which make the matter of suretyship a business for profit. See the numerous authorities cited in this note in support of the proposition.

Under the assignment stated in the fourth finding of fact, supra, the bridge company had the right to have all of the $16,149.80 due by the county to the contractors paid to it. Had it done so the debt of the contractors to it would have been reduced by the amount of $6,499.80, which it consented to have paid to the local merchants. But in that event the debt of the contractors to the merchants for that amount would have remained unpaid, and by virtue of their equitable assignment from the laborers they could have recovered that amount against appellant in this suit. The appellant suffered no injury by said transaction, as its liabilities were not lessened thereby. It can make no difference that in this suit it was the bridge company instead of the local merchants that recovered against it.

[3] Among the recoveries in this case against appellants was one for $1,612.60, in favor of the bank, the same being the principal and interest of the loan made to the contractors, as stated in our fifth finding of fact. In this we think there was error.

The contractors at the time they borrowed this money represented to the bank that they needed it to pay wages due the laborers. This was true, and the money was used for that purpose. The laborers, however, were not parties to this transaction. When they were paid, their debts were extinguished. The transaction did not constitute an equitable assignment of their debts, and did not subrogate the bank to their claims against appellant. I. & G. N. Ry. Co. v. Concrete Investment Co., 201 S. W. 723; Lion Bonding Co. v. Bank, 194 S. W. 1012; Bank v. Corse, 133 Tenn. 720, 182 S. W. 917; Morgan's S. S. Co. v. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Malone v. Kaufman, 38 Tex. 455.

[4, 5] There was no error, however, in the judgment of the court that the amount due the bank be paid out of the money in the registry of the court. The transaction mentioned in our fifth finding of fact constituted an assignment of the funds in the hands of the county to the amount of said indebtedness. This seems to be conceded by appellant, but it contends that it had a prior right to such fund, by reason of the previous as-

signment made to it, as stated in our third finding of fact.

The appellant relies upon the rule, "Qui prior est tempore, potior est jure." This rule is subject to limitations. An able English equity judge says: "This is an incorrect statement of the rule, for that proposition is far from being invariably true." Rice v. Rice, 2 Drew, 73. Mr. Pomeroy gives the following as a more correct statement of the rule: "As between persons having only equitable interests, if their equities are equal, qui prior est tempore, potior est jure." 1 Pomeroy, Eq. Jur. § 414. Again, the same learned author says: "Among successive equitable estates or interests, where there exists no special claim, advantage, or superiority in any one over the others, the order of time controls." 2 Pomeroy, Eq. Jur. § 682. "It is certainly not enough that two successive equitable interests should be of *precisely the same nature*, for even then one might be accompanied with some collateral incident which gave it a precedence over the other without reference to their order of time. When we say that A. has a better equity than B., this means that, according to those principles of right and justice which a court of equity recognizes and acts upon, it will prefer A. to B., and will interfere to enforce the rights of A. against B." Id. § 683.

We think that "the collateral incidents" existing in the instant case should, "according to the principles of right and justice," give the bank's equitable claim to the funds in the registry of the court precedence over that of appellant. In addition to the fact that the bank had no notice of the assignment to appellant, the effect of which we will discuss in the succeeding paragraphs of this opinion, the appellant did not part with anything of value as a consideration for the assignment to it. Such assignment was made to secure it against liability on its bond, which had been previously executed. On the other hand, the bank parted with $1,500 cash for the assignment to it. While the bank did not secure an assignment of the wages due to laborers, for the payment of which appellant was liable on its bond, nevertheless the money obtained from the bank was used to pay such laborers. For the reasons stated, we hold that the bank's assignment was superior in equity to that of appellant.

[6] For another reason we do not think that the court erred in adjudging the payment of the bank's debt out of the funds in the registry of the court: At the time the assignment was made to the bank, neither it nor the county had any notice of the previous assignment to appellees. As to the assignor, no notice is necessary. As to successive assignments it is the settled doctrine in England that notice of the assignment

must be given to the holder of the fund, in order for it to take precedence over a subsequent assignment. 2 Pomeroy, Eq. Jur. § 695. There is a diversity of opinion on this among the courts of the several states in this country. We know of no decision in Texas as to this point.

The learned editor of the note to Graham Paper Co. v. Pembroke, 71 Am. St. Rep. p. 34 et seq., after citing cases pro and con, says:

"Under the rule that the date of the assignment controls, where there is a prior and subsequent assignee of the same cause of action from the same person, it is evident that no assignment can be taken with safety. We are, therefore, induced to believe that the second rule, which allows the assignee who first gives notice to the debtor to obtain priority, is the better one, not only because of the reasons given in the principal case, but because it is in obedience to the general principle of law which requires that all transfers of property must be rendered as complete as the nature of the action will permit, in order to make them valid as against subsequent bona fide purchasers for a valuable consideration without notice. See Methven v. Staten Island, etc., Power Co., 66 Fed. 113, 13 C. C. A. 362. It is clearly the duty of an assignee, in order to perfect an assignment, to give notice to the debtor, and the amount of such a doctrine is that the bare assignment of a chose in action does not pass it away without notice of the fact to the debtor. If notice of the assignment is not communicated, it enables the original creditor to commit a fraud, as he may assign a second time, and such assignee, although he may take the precaution of inquiring of the debtor, yet he cannot ascertain from him the fact of a previous assignment, as it has never been communicated to him. Richards v. Griggs, 16 Mo. 416, 57 Am. Dec. 240; Maybin v. Kirby, 4 Rich Eq. [S. C.] 105; Murdoch v. Finney, 21 Mo. 138."

We concur in these views, and in support of same, in addition to the authorities above referred to, we cite Judson v. Corcoran, 17 How. (58 U. S.) 612, 15 L. Ed. 231; Spain v. Hamilton, 1 Wall. (68 U. S.) 604, 17 L. Ed. 619; Bank v. Farwell, 58 Fed. 633, 7 C. C. A. 391; Vanbuskirk v. Ins. Co., 14 Conn. 141, 36 Am. Dec. 473; Bank v. Hewitt, 3 Iowa, 93, 66 Am. Dec. 49; Houser v. Richardson, 90 Mo. App. 134; Wallston v. Braswell, 54 N. C. (1 Jones, Eq.) 137; Clodfelter v. Cox, 1 Sneed (Tenn.) 330, 60 Am. Dec. 157; Penniman v. Smith, 5 Lea (Tenn.) 130; Ward v. Morrison, 25 Vt. 593.

[7] Judgment was rendered in favor of R. E. Hoppe, among other things, for $183.25, for provisions furnished by him to the contractors, and used in running a boarding camp. These were furnished under an agreement of Hoppe with the contractors that they would deduct the board of the laborers from the amount due them for wages, and out of same pay him the amount due for groceries. The amount was so deducted, though it was not paid to Hoppe by the contractors. It does not appear that

the laborers were parties to this contract. They agreed that their board bills should be deducted from their wages. Under this agreement they were paid partly in cash and partly in board. This extinguished the debts to them. It does not appear that the laborers agreed that any part of their wages should be paid to Hoppe for groceries, or in fact that they knew that groceries were being bought from Hoppe. Such being the case, there was no equitable assignment of the laborers' wages to Hoppe, and the court erred in rendering judgment for him on this item.

[8] We are also of the opinion that the court erred in rendering judgment for Hoppe for $2.50 for a scraper sold by him to the bridge company, and used by them in constructing the bridge; also that it was error to render judgment against appellant in favor of Turney for $12.85 for brushes used in painting the bridge; also that the court erred in rendering judgment against appellant in favor of E. H. Eggleston for $45.50 loaned by him to the contractors to buy wood; and for $4.30 advanced by Eggleston to pay express on some bolts.

The scraper and paint brushes were tools, and were neither "labor nor material" used in the construction of the bridge.

Our reason for holding that appellants are not liable for money loaned the contractors is stated under our discussion of the judgment in favor of the bank, supra.

[9, 10] Appellant complains of the judgment of the court, in that it allowed certain of the appellees for wood furnished in running the engine used in hoisting the steel, for repairs of tools, and for hauling material from the railroad to the river.

We overrule these assignments, and also the assignment as to the judgment in favor of Mrs. Tomlin for cooking for the camp. We think these items were material used and labor performed "in the prosecution of the work provided for in the contract." This language of the statute requiring bond for the construction of public works is broader than that used in the mechanic's lien law, which gives a lien to those "who may labor or furnish material * * * for the construction of any house," etc. It might well be held the labor here referred to must be performed in the actual construction of the house, or for material that entered into the structure. It has been so held. But the language of the statute here under consideration gives a lien to those who supply labor and material "in the prosecution of the work provided for in the contract." This is a remedial statute enacted for the protection of those whose labor or material contributes to the "prosecution of the work," without reference to whether such labor was on the structure, or whether such material entered into the structure. If it directly and materially aided in the prosecution of the work, we think that is sufficient to bring it within the protection of the statute.

In the instant case it was necessary to hoist large steel beams. Had the contractors employed as many men as Pharaoh is supposed to have used in building the pyramids, perhaps this could have been done with their hands. It was none the less "in the prosecution of the work" because it was done with a steam engine. The wood used in making the steam was as essential as was the muscular strength of those who performed manual labor. In order for the engine to do the work, it was necessary to keep it in repair. Food was essential to the laborers, and it was necessary that it be cooked. It facilitated the work to have laborers take their meals in the camp, instead of going to town for them. We think the cooking, under the circumstances, was labor performed "in the prosecution of the work." We are aware of the fact that there are decisions in other jurisdictions which hold contrary to the views which we have expressed. There are also decisions sustaining our views which we think are supported by better reason. See Breault v. Archambault, 64 Minn. 420, 67 N. W. 348, 58 Am. St. Rep. 545; Winslow v. Urquhart, 39 Wis. 260; Heddan v. Walden, 31 N. D. 393, 153 N. W. 1015.

The judgment of the trial court will be here reformed in accordance with this opinion, and as thus reformed it is affirmed.

Reformed and affirmed.

### On Motion for Rehearing.

The appellant, the bonding company, in its motion for a rehearing complains that we overruled its first assignment without specific reference thereto. Said assignment is as follows:

[11] "The court erred in its conclusions of law and in rendering judgment for Vincennes Bridge Company for $6,407.09, because: (1) The Vincennes Bridge Company and Hess & Skinner Engineering Company entered into a contract on the 28th day of May, 1914, by the terms of which Hess & Skinner Engineering Company agreed to purchase from Vincennes Bridge Company the steel for the construction of a bridge in road district No. 1, Bastrop county, Texas, trusses at $2.40 and cylinders at $2.10, one-half of which was to be paid for in cash upon delivery of the metal at shop, and the balance in warrants on Bastrop county, Texas, with 6 per cent. interest from dates of shipments; and Vincennes Bridge Company changed the contract, and failed to demand or collect the one-half in cash, and shipped out and delivered to Hess & Skinner Engineering Company all of said bridge material, and in this way changed the terms of the contract, and relieved the Lion Bonding & Surety Company from any liability as surety upon Hess & Skinner Engineering Company's bond."

We did not discuss this assignment because we thought it showed upon its face, when taken in connection with the undisputed evidence, that it was without merit. The appellant in its original brief cited a long list of authorities under this assignment, none of which, in our opinion, are in point, except the case of American Bonding Co. v. United States et al., 233 Fed. 364, 147 C. C. A. 300. The other authorities cited announce the proposition that where parties enter into a contract, and a third party becomes surety for its performance, any material change in the contract made by such contracting parties will release the sureties, without regard to whether such change is to the injury of the surety, and without reference to whether the surety became such for accommodation or for hire. This proposition is so well settled that it needed no citation of authorities to support it. This is so for the reason that the new contract is not the one the performance of which was guaranteed by the surety.

The assignment alleges that the contractor and the bridge company "changed the contract." What contract? Not the one entered into between the county and the contractor, upon which appellant became surety, but a contract between the contractor and the bridge company. Did this change release the appellant? The case of American Bonding Co. v. United States et al., supra, cited by appellant, holds that it did not, unless the appellant was materially injured thereby. We quote from that case as follows:

"Companies that make a business of guaranty insurance * * * are not relieved * * * unless the change [in the contract] has done them harm." 233 Fed. 369, 147 C. C. A. 305.

In that case the terms of the contract between the contractor and the Marble Company were that the Marble Company was to be paid $75,000, as the work progressed, for the marble furnished by it. The court says:

"These terms were not observed at all. * * * If the terms of this subcontract had been observed, the marble company would have been paid 80 per cent. in cash as the work went on, and, even if the retained 20 per cent. had not been paid at the end, the loss of the surety company would have been no larger than this percentage. In fact, however, it is confronted now with a judgment (in favor of the marble company) for $26,000, and with a contingent liability, which may or may not become an actual liability, of more than $30,000 in addition."

The change complained of in the instant case was that the bridge company shipped the material without collecting one-half of the value of the same before making shipments. This worked no injury to appellant's. Much more than one-half of the value of such shipments was paid to the bridge company by the contractors as the work progressed, though not before the same was shipped from Vincennes, Ind.

There is neither pleading nor evidence to show where the "shop" mentioned in the contract was located.

In our opinion, the law in reference to releasing a surety by reason of a change in the contract which he had guaranteed has no application to a change in the contract between the contractor and a subcontractor thereafter made. Such contract, where it provides for payments in advance, or as the work progresses, is in the nature of security to the subcontractor; and, if he consents to a change of the contract so as to impair his security, the surety will be released to the extent that he is injured thereby. In such case, in order to release the surety pro tanto, there must be both a change in the contract between the contractor and the subcontractor, and resultant injury to the surety.

It is apparent from the record that there was a clerical error in entering judgment for the Smithville Gin Company for $62.85, when it should have been for $78.85. The motion of said appellee to reform the judgment as above indicated is granted, and said judgment is so reformed.

Judgment was entered in the court below for Mrs. Susie McDaniel for $128.05. Mrs. McDaniel was not a party to this suit. Such judgment should have been in favor of L. W. Pohplatz, and the judgment of the trial court is here so reformed.

Appellant's motion for a rehearing is overruled.

Motion overruled.

&#9756;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes