WHARTON v. FIDELITY MUT. LIFE INS. CO. OF PHILADELPHIA.

(Court of Civil Appeals of Texas. Dallas. April 5, 1913. Rehearing Denied May 3, 1913.)

1. PRINCIPAL AND SURETY (§ 23*)—EXISTENCE OF RELATION—CONTRACTS—EXECUTION.

An agency contract of a life insurance company contained on the back thereof rules reciting that the agent must furnish a bond with two sureties, and a statement with reference to their financial responsibility. A bond executed by the agent and one surety had printed at the bottom thereof a "notice to sureties" that not less than two sureties were required. The surety had not read the rules and did not rely on the notice. The company had no knowledge of the representations by the agent to the surety that another surety would be procured before delivering the bond; nor had the company authorized the making of such representations. Held, that the company accepting the bond signed by but one surety could hold the surety; it not being bound by the representations of the agent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 45–54; Dec. Dig. § 23.*]

2. PRINCIPAL AND SURETY (§ 23*)—EXISTENCE OF RELATION—CONTRACTS—EXECUTION.

One signing an obligation as surety on condition that another shall also sign it is not bound when the other does not sign it and when the obligee has notice of the condition, but, where the obligation is delivered to an ob-

ligee who has no knowledge of the condition, the surety is liable.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 45–54; Dec. Dig. § 23.*]

3. PRINCIPAL AND SURETY (§ 101*) — DISCHARGE OF SURETY—MODIFICATION OF CONTRACT.

A surety on a bond which binds him to all changes or modifications made in the contract between the obligor and obligee is not discharged from liability because of material modifications.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. § 101.*] .

4. LIMITATION OF ACTIONS (§ 47*)—ACTIONS ON BONDS—LIMITATIONS.

Where the relation of employer and employé was severed by the employer's refusal to make advances provided for in the contract, and the employé ceased to work for the employer, the contract was terminated and limitations began to run on a bond given by the employé conditioned on his accounting for all moneys received by him, and an action on the bond brought more than four years thereafter was barred by limitations, though the employé owed the employer money.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 254–258; Dec. Dig. § 47.*]

5. LIMITATION OF ACTIONS (§ 199*)—ACTIONS ON BONDS—LIMITATIONS.

Whether an action on a bond conditioned on an employé accounting for moneys received by him was begun within four years after the termination of the employment held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 727–730; Dec. Dig. § 199.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by the Fidelity Mutual Life Insurance Company of Philadelphia against J. H. Wharton. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial on a single issue.

Jesse F. Holt, of Sherman, for appellant. Hamp. P. Abney and Head, Smith, Hare, Maxey & Head, all of Sherman, L. J. Polk, Jr., of Brownsville, and Jones & Hassell, of Sherman, for appellee.

RAINEY, C. J. W. C. Wharton was the agent of the Fidelity Mutual Life Insurance Company of Philadelphia, and as such executed a bond in the sum of $700, conditioned, among other things, for the faithful performance of his duties. J. H. Wharton signed said bond as the only surety thereon. W. C. Wharton failed to pay over moneys claimed to be due appellee by him, and appellee sued to recover the amount of said bond, alleging insolvency of said W. C. Wharton, etc.

Defendant, after a general denial, pleaded specifically under oath that he was not liable, because: (1) Under the terms of the written contract of employment specifically referred to and in effect adopted in the bond, it was agreed by the appellee that it would require at least two sureties on said bond, with a statement as to the financial responsibility of each, before it would be accepted, and that, in addition to the provisions of the contract, appellee had given express notice to appellant that it would require at least two sureties, and that such notice was inserted in the face of the bond itself, and that, in violation of the contract for two sureties and in violation of the express notice in the bond that two sureties would be required before acceptance, appellee had accepted the bond with only appellant as surety; (2) that the principal, W. C. Wharton, had expressly promised to get another surety before delivering the bond to appellee, and represented that the same would not be accepted without at least two sureties, all of which were known to appellee, and that with this knowledge it accepted the bond with only one surety, without appellant's knowledge and consent; (3) that the contract provided that only the sum of $18 per week should be advanced to said W. C. Wharton, and that for traveling expenses, but that after the bond was delivered to appellee the said contract was materially altered, or deviated from, in that an agreement was made to advance much more than $18 per week and for other than traveling expenses and for purposes not authorized by the contract and such advances made; (4) that the amount involved was less than the jurisdiction of the court; and (5) the four years statute of limitation.

By supplemental pleadings, after a general denial, appellee pleaded specially that under the laws of Arkansas, where it was alleged the bond was performable, appellant became liable absolutely under the bond and could not be heard to deny liability or to plead any matter of fact affixing a condition to his liability as surety. A trial was had before a jury, and a verdict by direction of the court and a judgment were rendered in favor of the appellee for the amount of the bond, and J. H. Wharton appeals.

[1] Appellant complains of the refusal to give the following charge: "At the instance of the defendant the jury is instructed as follows: 'The contract and bond in this case are for the court to construe. The contract dated March 22, 1901, obligated the plaintiff to require two sureties upon any bond given by the said W. C. Wharton, and obligated him to procure two sureties thereon, with statement as to financial responsibility of each. This contract was in existence when the defendant signed said bond and is referred to in said bond. Under the law the plaintiff had no right to waive the requirement of two sureties after defendant had signed said bond, without his consent, and the undisputed proof shows that he did not consent to accepting said bond with only one surety, and you are therefore instructed to find a verdict for the defendant.'"

The signature of J. H. Wharton to the

bond as surety was procured by W. C. Wharton. The bond was conditioned: "That if the above-bounden principal, W. C. Wharton, of Texarkana, Ark., his heirs, executors, administrators, or any of them, shall well and truly promptly pay, or cause to be paid, unto the above-named the Fidelity Mutual Life Insurance Company, or its legal representatives, any and all moneys which may come into his hand as agent of or for said company, and shall pay, or cause to be paid, to said company all loans or advances made to him by said company on account of future commissions or otherwise, shall not incur any indebtedness for advertising, office rent, purchase of supplies, or for any matter or thing whatsoever in the name of the company, without the written consent of the president, and shall and do in all things well and truly observe, fulfill, and keep all and singular the articles, clauses, provisions, conditions, and agreements whatsoever, which, on the part of the said W. C. Wharton, are or ought to be observed, performed, fulfilled, and kept, comprised, and mentioned in any or all contracts or agreements heretofore or hereafter made between him and the said Fidelity Mutual Life Insurance Company, or its representative, according to the purport, true intent, and meaning of the same, or contained and mentioned in any change or modification of the same, then this obligation to be null and void, or else to remain in full force and virtue."

The bond was printed, and there was space left for the signatures of three sureties, and thereunder, at the bottom, was printed this notice: "Notice to Sureties.—Not less than two sureties are required in every case, but it is expressly understood that individual as well as joint liability attaches from date of signature." On the back of the agency contract, between appellee and W. C. Wharton, was printed certain "rules, regulations, and instructions," which were evidently for the guidance of agents, and among them was this: "Eighth. All agents are required to furnish a good and sufficient bond, with at least two sureties, and a statement with reference to the financial responsibility of the sureties must accompany every bond."

There is no evidence by appellant that he ever read the rules on the contract of W. C. Wharton with appellee, or relied on the notice in regard to the requirement of two sureties on the bond, nor does he say that the procuring of one other surety was a condition upon which he signed the bond, and, if so, there was no proof that appellee had knowledge of the representations claimed to have been made to appellant by W. C. Wharton in reference to procuring other sureties, or that appellee had authorized the making of said representations. The evidence, we think, shows that appellee did nothing by which appellant was deceived or that caused him to be deceived in signing the bond. The fact that it had a rule re-

quiring two or more sureties on a bond was for its own protection, and not for the benefit of those who might sign as sureties, and when appellant signed the bond he did so at his own risk. The company was not bound by the representations of W. C. Wharton, as he was not representing the company in getting the bond signed, but was working for himself in order that he might retain the position of solicitor for the company.

[2] The authorities hold that a party signing an obligation as surety on the condition that another is also to sign it, and, if that other does not sign it, he is not bound thereon when the obligation is delivered, and the obligee has notice of the condition upon which the surety signed it. But when the obligation is delivered to the obligee, and he has no knowledge of the conditions upon which the surety signed it, the surety is liable and cannot defeat the obligation on the ground that the condition was not complied with. Bopp v. Hansford, 18 Tex. Civ. App. 340, 45 S. W. 748; Chamberlain v. Hodgetts, 99 S. W. 162; French v. Hicks, 52 Tex. Civ. App. 427, 114 S. W. 691.

In the case of French v. Hicks, supra, cited by appellant in support of his position, this court held that the surety was not liable, but in that case the bond had a stipulation that, if there were three sureties signing the bond, it was to be binding, and "not otherwise." This clause being a part of the bond, it was, by its very terms, inoperative, and the obligee was bound to take notice thereof. The case at bar is a different case. While appellant had notice that appellee had a rule to require two or more sureties, it had the right to waive that requirement and accept the bond with one surety thereon.

Appellant's second assignment presents virtually the same questions as that discussed under the first assignment, and, as what we have said under that assignment applies with equal force to this one we deem it only necessary to say here that the assignment is not well taken.

[3] The next assignment relates to the refusal of a special charge on the question of the change of the contract of appellee and W. C. Wharton after the execution of the bond, which change was the allowance of $25 per week advancement for traveling expenses, instead of $18 per week, as stated in the contract. The appellant is in no position to complain along this score, for the appellee in the bond signed by appellant made provision for this condition by binding him to all changes or modifications made in the contract between W. C. Wharton and the appellee. Being thus bound, appellant is liable for such changes. We understand the general rule of law to be that when a material change is made in a contract without the consent of the surety it will avoid a contract as to him, but not as in this case, where the surety agreed that changes could be made. This and the fourth assignment

relating to the same subject are overruled.

[4, 5] This brings us to the question of limitation pleaded by appellant. The appellant requested the court to charge as follows, which was refused: "This suit was filed February 18, 1911. If you find from the evidence that W. C. Wharton's contract was terminated with plaintiff (that is to say, plaintiff ceased making advancements to pay traveling expenses of W. C. Wharton, and W. C. Wharton ceased working for plaintiff under said contract prior to February 17, 1907) you will find for defendant." The testimony on this issue was as follows:

W. C. Wharton testified: "I do not remember the exact date I quit working for them, but think the date the last advance of $2,500 was made was about when I quit, and it is dated December 14, 1906. The last two weeks that I worked for the company I spent at Plummerville, Ark. When I failed to receive a check for my expenses, I wrote to Mr. Bright, but received no answer. Then I wrote him a second letter asking him to send check, but received no answer. Then I called him by telephone and asked him why he had not sent check, and he told me he had instructions to make no further advances to me. I have never received a letter from the company, nor any one representing the company, relative to their refusal to make further advancements to me, and have never written a letter to the company, nor any representative of the company relative to the matter. When Mr. Bright told me in our conversation over the telephone that no further advancements would be made, our contract, of course, was terminated, as I could not work without sufficient funds to meet my expenses. I do not remember the exact date on which I ceased working for the plaintiff, but think it was in December, 1906, or January, 1907. I ceased working for the company at this time because the company failed and refused to make further advances with which to meet my expenses, and this terminated the contract. Prior to this time they had not ceased making me the weekly advances. I quit working about two weeks from the time I received the last check from plaintiff for expenses."

R. C. Bright, appellee's state manager, testified: "He did not sever his relations with the plaintiff, but we did not renew his certificate of authority. He defaulted the condition of his bond, and we were first apprised of this about March 1, 1907. I mean when I say the contract was not formally terminated that we did not give him the 30 days' notice required in the contract and he did not give us the 30 days' notice. The contract has not yet been terminated. We ceased making advancements to cover traveling expenses in December, 1906. He wanted us to continue making advancements of traveling expenses, but we refused to advance

any further money to cover traveling expenses and explained to him the reason. This was in December, 1906. That is when the last advancement of $25 per week was made, but we advanced him $15 January 25, 1907. That was for expenses, or for account of expenses. He called me up over the phone and was continuing his work and asked me to send him $15; that he needed it so he could get out and get business. That is the item in the account of date January 25, 1907. Draft, $15. That is the last advance made to him to cover traveling expenses. Other items in the account bearing date of March, 1907, were some unfinished business he had on hand at the time. Adjustments of outstanding business. He may have had notes due or to become due in the hands of the company, and he certainly had a few policies even at that time that he had not disposed of. There is a credit some time in March, 1907, of $130 which was unfinished business which he had written prior to January 25, 1907."

This evidence raises an issue that should have been submitted to the jury for their determination.

If the relation of employer and employé had been severed, as stated by W. C. Wharton, by appellee refusing to make the advances provided for in the contract, and Wharton had ceased to work for the company, the contract was then terminated, and the statute of limitation began to run, and the fact that Wharton owed appellee money does not affect the question.

As all of the questions raised in the case, except that of limitation, are herein decided against appellant, the trial court need not try any other question but that of limitation, and the cause is reversed and remanded for the trial of that issue.