**BRADSHAW et al. v. WOLFE CITY et al.**
(No. 10081.)

Court of Civil Appeals of Texas. Dallas.
Dec. 17, 1927.

Rehearing Denied March 3, 1928.

1. **Appeal and error** ⬅870(3)—**By failing to appeal from order overruling pleas of privilege, defendants waived right to have matter reviewed.**

Where pleas of privilege were overruled March 30, 1925, in Eighth judicial district, and no appeal was prosecuted therefrom and case was continued from term to term and transferred from one court to another until January 29, 1927, when trial was had in Sixty-Second judicial district, defendants, by failing to appeal from order overruling pleas of privilege, waived right to have matter reviewed.

2. **Municipal corporations** ⬅348—**Intervener's plea sufficiently alleged that laborers whose claims intervener paid had assignable causes of action.**

In suit against municipal contractor and surety in which bank intervened seeking to recover amount paid out by it in settlement of claims of laborers and materialmen, bank's plea held to sufficiently allege that laborers themselves had assignable causes of action that were assigned to intervener, especially where defendants possessed information regarding matters not alleged.

3. **Limitation of actions** ⬅127(4)—**Original plea of intervention interrupted running of limitations, where amended pleadings alleged same claims more specifically (Rev. St. 1925, art. 5162).**

In suit by city against contractor and surety for breach of contract for construction of dam, in which bank intervened seeking to recover amount paid out in settlement of claims of laborers and materialmen, original plea of intervention interrupted operation of statute of limitation, Rev. St. 1925, art. 5162, where in amended plea, alleging claims in more specific and detailed manner, bank sought to recover on all claims set up in original plea except that certain claims aggregating sum of $214.95 were set up for first time in amended plea, but claims filed in original plea exceeded amount found in bank's favor.

4. **Municipal corporations** ⬅347(1)—**Changes in dimensions in constructing waterworks dam need not be in writing to bind surety; "extra work."**

Changes in dimensions of work, under contract for construction of waterworks dam, providing that city should have right to make any changes that might thereafter be determined upon in nature of dimensions of work either before or after its commencement, could not be classified as "extra work," authority for which was required to be in writing under contract to bind surety; phrase "extra work," as used in construction contracts, meaning work entirely outside and independent of contract—something not required or contemplated in its performance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Extra Work.]

5. **Subrogation** ⬅27—**"Conventional subrogation" results when third party advances money to pay lienholders by understanding that he will be substituted in creditor's place.**

"Conventional subrogation" results when third party is induced to advance money to pay lienholders or claims of laborers and materialmen, by an understanding with either debtor or creditor that he shall be substituted in place of such creditor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conventional Subrogation.]

6. **Subrogation** ⬅27—**Bank held subrogated to rights of laborers constructing waterworks dam and materialmen whose claims it paid as against surety on contractor's bonds, where debtor agreed to substitute it in place of creditors.**

Where contractor building waterworks dam, city council and bank cashier agreed that bank advancing money to pay laborers and materialmen should take place and stand in shoes of persons holding claims, which were later assigned to bank, and money was set aside by bank for specific purpose of paying claims in exact amount they aggregated, bank was subrogated to rights of laborers and materialmen, whose claims it paid under doctrine of conventional subrogation, as against surety on contractor's bond.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Municipal corporations** ⟨⟩347(1)—**Where contractor defaulted, city could recover excess of contract price which it would cost to complete dam, though work was not completed.**

Where contractor failed to complete waterworks dam, and city, as it was authorized to do, proceeded with work expending certain sum towards its completion but left same uncompleted for reason that it had exhausted all available funds that could be used for such purpose, city, in suit against contractor and surety, could recover excess over contract price that it would cost city to complete dam according to plans and specifications, and it was not necessary for city to complete work and actually expend money as condition precedent to its right to recover damages.

**8. Appeal and error** ⟨⟩742(1)—**Propositions not found among points or propositions will not be adjudicated (Rule 30 for Courts of Civil Appeals).**

Propositions not found among points or propositions on which appeal is predicated, as required by Rule 30 for Courts of Civil Appeals, will not be adjudicated.

### On Rehearing.

**9. Appeal and error** ⟨⟩742(1)—**Proposition that judgment was in excess of amount sued for and exceeded amount of surety's liability presented fundamental error (Rule 30 for Courts of Civil Appeals).**

Proposition that judgment in suit by city against contractor and surety, in which bank and others intervened, in favor of city, was in excess of amount sued for, and that aggregates of judgments in favor of city and intervener exceeded amount of defendant surety's liability as fixed in bond, presented fundamental error, and should be considered although not presented as one of propositions on which appeal was predicated, as required by rule 30 for Courts of Civil Appeals.

**10. Appeal and error** ⟨⟩1033(8)—**In suit by city against contractor and surety, in which bank intervened, judgment relieving surety from paying any sum to city, by directing use of city's deposit if error, held harmless as to surety.**

In suit by city against contractor and surety in which bank and others intervened, judgment directing that city's money on deposit with bank be used to satisfy sum found in favor of city, thus relieving surety from payment of any sum whatever to city, and applying balance of fund as credit on amount found in favor of bank, if error, *held* harmless so far as surety was concerned, as neither contractor nor surety owned fund in question nor asserted any right to control its distribution.

**11. Appeal and error** ⟨⟩1033(8)—**Beneficiaries of court's order could not complain, where only parties who could have complained made no complaint.**

In suit by city against contractor and surety, in which bank and others intervened, where court directed that city's money on deposit with bank be used to satisfy sum found in favor of city, and that balance of this fund be applied as credit on amount found in favor of bank, surety and contractor, the beneficiaries of court's order, could not complain where city and bank, the only parties who could have complained, made no complaint.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Suit by the City of Wolfe City and others against T. A. Bradshaw and another, in which the First State Bank of Wolfe City intervened. From the judgment, defendant named and another appeal. Affirmed.

Lawther, Pope, Leachman & Lawther, of Dallas, and Jones & Jones, of Mineola, for appellants.

L. A. Clark and Bowman & Bowman, all of Greenville, for appellees.

LOONEY, J.  T. A. Bradshaw contracted to build a waterworks dam for the city of Wolfe City, according to plans and specifications prepared by the city's engineer, and was to furnish a contractor's bond in the sum of $5,000, conditioned for the faithful performance of the contract. This bond was furnished with the Employers' Casualty Company as surety. Bradshaw failed to complete the work undertaken, and the city, as it was authorized to do, took charge and proceeded with the work, expending thereon $2,152.60 towards its completion, but left the same uncompleted for the reason that it exhausted all available funds that could have been used for that purpose.

The city brought this suit against Bradshaw and the casualty company to recover the amount expended, plus the additional sum necessary to complete the dam according to contract. The First State Bank of Wolfe City intervened, seeking to recover from Bradshaw and the surety company $3,800, the amount paid out by it in settlement of claims of laborers and materialmen. A. A. Humphrey also intervened on a claim for work performed by him for Bradshaw on the job. There were other interventions, but, as they are not involved here, it is not necessary that they be noticed. The case was tried to a jury, and resulted in the judgment from which Bradshaw and the casualty company have appealed.

[1] 1. The defendants Bradshaw and the casualty company filed pleas of privilege that were contested, and on hearing were overruled by the court, on which error is assigned. The record discloses that these pleas of privilege were overruled on March 30, 1925, in the Eighth judicial district; no appeal was prosecuted therefrom; the case was continued from term to term, and transferred from one court to another until on January 29, 1927, trial was had in the Sixty-Second judicial district. By failing to appeal from

the order of court overruling the pleas of privilege, appellants waived their right to have the matter reviewed. Smith Brothers Grain Co. v. Windsor & Stanley (Tex. Com. App.) 255 S. W. 158; Wright v. Cooke (Tex. Civ. App.) 287 S. W. 526; Farmersville, etc., Co. v. Moore (Tex. Civ. App.) 292 S. W. 555. We therefore overrule this assignment.

[2] 2. The casualty company contends that the court erred in not sustaining its exceptions to the amended plea of intervention filed by the bank, because the plea failed to sufficiently allege that laborers themselves had assignable causes of action that were assigned to intervener before being paid and extinguished.

The plea of intervention alleged the number of hours each employee labored, the wages each was to receive, and when the work was done. The same allegations were made with reference to all claims declared on, except that of C. C. Crable, blacksmith, for labor and material, which was itemized with detailed particularity, and the claim of A. A. Humphrey for $1,051.50, with reference to which the plea alleged that Humphrey, with a large number of hands, teams, fresnos, scrapers, wagons, plows, and other machines, worked on the job and earned the said sum of money; that a daily record was kept by those in charge of the work for Bradshaw showing the amount of work done, the names of those who performed same, and the teams and machinery used; that said record was destroyed by fire and could not be produced, but that Bradshaw and the casualty company were in possession of all the facts; and that all matters otherwise connected therewith, not alleged by intervener, were unknown to it and could not be ascertained.

It is made to appear that appellants were in fact in possession of this information from an admission in their brief at page 110, where it is disclosed that, while arguing the special exception under consideration, the trial court was informed by appellant what the evidence would show. The plea, in our opinion, was sufficient; hence the court did not err in overruling the same, besides it appears that appellant could not have been surprised, under the circumstances.

[3] 3. The casualty company contends that a new cause of action was set up by the bank in its amended plea of intervention filed more than two years after it furnished the money to pay off laborers and materialmen; therefore the same was barred by the one-year statute of limitation prescribed in article 5162, Revised Statutes of 1925.

The record discloses that Bradshaw abandoned the work in September, 1924; This suit was filed February 3, 1925; the bank filed its original plea of intervention on March 10, 1925. In its original plea, the bank sought to recover on all claims later set up in its amended plea filed January 10,

1927, except certain claims that aggregate the sum of $214.95, set up for the first time in the amended plea. If, however, we deduct this amount, there is still left claims aggregating $3,813.16, an amount in excess of the sum found in its favor, by $13.16. The cause of action, based on claims that aggregate the sum of $3,813.16, as alleged by intervener in its original and amended pleadings, is the same in each pleading; the allegations of the latter being more specific and detailed. The filing of the original plea of intervention interrupted the operation of the statute of limitation. This contention is overruled. G. C. & S. F. Ry. v. Baker (Tex. Civ. App.) 218 S. W. 7, 10; Mann v. Mitchell (Tex. Civ. App.) 241 S. W. 715, 717.

[4] 4. The surety company insists that it was released from liability on the bond for the reason that material changes and alterations were made in the contract by the city's engineer—after the bond was executed—without its knowledge or consent, and not in writing as required by an express provision of the contract.

Before work was begun by Bradshaw on the dam, the city's engineer instructed him orally to change the grade on the upstream side to a slope of 2½ to 1 instead of 2 to 1, meaning that the upper slope should be 2½ feet of base to each foot of altitude, instead of 2 feet of base to 1 foot of altitude, and also widened the crown of the dam from 6 to 8 feet, which necessitated the addition of 15 feet in width to the base on the upstream side. These changes added at least $1,000 additional cost to the city, and, although consented to by Bradshaw, was without the knowledge of the surety company.

The pertinent provisions of the contract are as follows:

"Changes. The city shall have the right to make any changes that may be hereafter determined upon, in the nature of dimensions of the work, either before or after its commencement, and such changes shall in no way affect or void the obligation of this contract. If such changes make any change in the cost of the work, an equitable adjustment shall be made by the engineer to cover the same.

"Extra Work. No bill or claim for extra work shall be allowed or paid unless the doing of such extra work shall have been authorized in writing by the engineer. The price for such work shall be determined by the engineer, who will provide that the price shall be determined by the actual cost, to which shall be added 15% to cover general expenses and superintendence, profits, contingencies, use of tools, contractor's risk and liability. If the contractor shall perform any work which is not provided for in this contract, or which was not authorized in writing by the engineer, said contractor shall receive no compensation for such work or material so furnished, and does hereby release and discharge the city from any liability therefor. If contractor shall proceed with such extra work after receiving the written authority therefor, as hereinbefore provided, then such

work or material, stated in the written authority of the engineer, shall be covered, governed and controlled by all the terms and provisions of this contract, subject to such prices as may be agreed upon or fixed by the engineer. If the contractor shall decline or fail to perform such work as authorized by the engineer in writing, as aforesaid, the city may then arrange for the performance of the work in any manner it may see fit, the same as if this contract had not been executed, and the contractor shall not interfere with such performance of the work."

The position of the surety company is that these changes in the contract, made before the work was begun, constituted in effect the making of a new contract without its knowledge or consent, and the changes not having been authorized in writing by the engineer, as provided in the contract, released it from the obligation of surety on the bond.

It may be conceded that, if appellant's construction of the contract is correct, that is, if the changes in the dimensions of the dam should have been authorized in writing by the engineer, the contract was violated, a material alteration took place without its knowledge or consent, and that it was thereby discharged. Lonergan v. San Antonio, etc., Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803. We cannot, however, accept this view. Changes in dimensions of the work, either before or after commencement, were not required to be authorized in writing. No agreement or collateral contract with any one with reference thereto was required as a condition precedent. It was not optional with the contractor whether he would or would not make the changes; it was his plain duty to do so, by the terms of the contract, and his compensation therefor was to be adjusted by the engineer on the basis of the unit price for similar work specified in the contract. On the other hand, if "extra work" was ordered by the engineer, the procedure was radically different. It was required to be authorized in writing, and, if performed without having been so authorized, no compensation could be demanded therefor. "Extra work," if performed by the contractor, which he was not compelled to do, contemplated a new or a collateral agreement, his compensation to be determined by the engineer on the basis of actual cost, plus 15 per cent.

The paragraphs of the contract quoted above classified the work into different items, one under the heading of "Changes," the other under the heading of "Extra Work." These deal with different subjects and are controlled by different and inconsistent procedure. Changes in the dimensions of work already projected cannot be classified as "extra work"; the phrase, as used in construction contracts, means work entirely outside and independent of the contract—some-

thing not required or contemplated in its performance. Rebekah Assembly v. Pulse, 47 Ind. App. 466, 92 N. E. 1045, 94 N. E. 779; Molloy v. Village, etc., 145 App. Div. 483, 129 N. Y. S. 929-936; Coryell v. Dubois, 226 Pa. 103, 75 A. 25. Our courts have uniformly held, in passing on similar contracts, that changes, such as are involved in the case at bar, were consented to in advance, the making of which did not result in discharging the surety. Zang v. Hubbard, etc., Co. (Tex. Civ. App.) 125 S. W. 85; Wharton v. Fidelity, etc., Co. (Tex. Civ. App.) 156 S. W. 539; Jones v. Gambill (Tex. Civ. App.) 241 S. W. 1067; Employers' Casualty Co. v. Irene Independent School District (Tex. Civ. App.) 286 S. W. 539; Village of Newark v. Leary Construction Co., 118 Misc. Rep. 622, 194 N. Y. S. 212. We therefore overrule this contention.

[5, 6] 5. The surety company contends further that the advance of money by the bank to pay laborers and materialmen was simply a loan of money to Bradshaw; that he issued checks on the bank in favor of these persons in payment of their respective claims; that the checks were cashed by the bank and the claims extinguished; that neither the surety company nor the laborers were parties to the understanding between the bank, Bradshaw, and the city authorities, and had no knowledge thereof, and that at the time the bank secured written assignments of these claims there existed no rights in the claimants to which the bank could have been subrogated.

The pertinent facts bearing on this proposition are that the laborers and materialmen, to whom Bradshaw was indebted, had quit work and were demanding their money. Bradshaw appealed to the bank for assistance; the bank was willing to advance the money to pay the claims, if it could be fully protected. Its attorney advised that, if Bradshaw would give an order on the city for the amount of the claims, and agree that the bank should take the place and stand in the shoes of the persons holding claims, it could safely advance the money, but advised, as a precautionary measure, that the bank take from each laborer and materialman an assignment of his claim. At a meeting between Bradshaw, the city council, and the cashier of the bank, these terms were all agreed to. After ascertaining the amount of the claims for labor and material, and after the agreement, as above stated, that the bank should be subrogated to the rights of the claimants, the bank placed to the credit of Bradshaw the exact amount the claims aggregated, took his note therefor, not to be paid, however, but in order to satisfy a rule governing banks that prohibited overdrafts. Neither the surety nor the claimants were parties to this agreement, but after checks were drawn by Brad-

shaw in favor of these claimants, and were cashed, the bank obtained written assignments from the respective claimants in pursuance of the agreement with Bradshaw that assignments would be executed.

In view of this situation, was the bank subrogated to the rights of these laborers and materialmen?

We believe it was, for the following reasons:

Conventional subrogation results when a third party is induced to advance money to pay lienholders or the claims of laborers and materialmen, such as are involved here, by an understanding with either debtor or creditor that he shall be substituted in the place of such creditor. This rule was announced in North River Construction Co. Case, reported in 38 N. J. Eq. 433, 436, in the following language:

"It is not sufficient that a person paying the debt of another should do so merely with the understanding on his part that he should be subrogated to the rights of the creditor. Conventional subrogation can only result from an express agreement either with the debtor .or creditor."

The same doctrine is announced in 25 R. C. L. p. 1317, § 5, as follows:

"It has been said that conventional subrogation can result only from an express agreement, either with the debtor or creditor, and that it is not enough that a person paying the debt of another shall do so merely upon the understanding on his part that he should be subrogated to the rights of the creditor, but most courts hold that a contract for conventional subrogation may be implied from the circumstances. The agreement may be made between the debtor, creditor and the third person, or between the creditor and the third person, or even between the debtor and the third person so long as the creditor is not thereby prejudiced." Wilkens v. Gibson (Ga.) 38 S. E. 374; Crumlish v. Central Improvement Co., 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, note at page 128, 45 Am. St. Rep. 872; also, 25 R. C. L. p. 1374, § 57.

Tried by the rule just announced, the bank was, in our opinion, clearly subrogated to the rights of the laborers and materialmen whose claims it paid. The money was not advanced as a loan to Bradshaw, but was set aside by the bank for the specific purpose of paying these claims and in the exact amount they aggregated, and was paid out only after the agreement with Bradshaw that it should be substituted for, and would take the shoes of, these laborers and materialmen.

The following Texas cases illustrate the application of the doctrine of conventional subrogation: Ellis v. Singletary, 45 Tex. 27; Hicks v. Morris, 57 Tex. 658; Dillon v. Kauffman, 58 Tex. 696, 705; Manning v. Green, 56 Tex. Civ. App. 579, 121 S. W. 721, 724; Pridgen v. Warn, 79 Tex. 588, 593, 594, 15 S. W. 559.

Appellant contends, however, that its posi-

tion is fully sustained by the following cases, to wit: Malone v. Kaufman, 38 Tex. 455 (this case was expressly overruled in Hicks v. Morris, 57 Tex. 658); Hess, etc., Co. v. Turney (Tex. Civ. App.) 207 S. W. 171; Id., by the Supreme Court, 110 Tex. 148, 216 S. W. 621, 623; Lion Bonding, etc., Co. v. First State Bank (Tex. Civ. App.) 194 S. W. 1012; U. S. Fidelity & Guaranty Co. v. Henderson County (Tex. Civ. App.). 253 S. W. 835, 842.

These cases, in our opinion, are not in point for the reason that there is absent from each the necessary element, present in the case at bar, of an agreement between the third party, who advanced the money, and the debtor or creditor for substitution, from which subrogation results. We therefore hold that the bank was subrogated to the rights of the laborers and materialmen whose claims it paid, and overrule appellant's contention to the contrary.

[7] 6. Appellant insists further that the court applied an incorrect measure of damages in allowing the city to recover the excess over the contract price that it would cost to complete the dam according to plans and specifications. Appellant's insistence is that when Bradshaw abandoned the contract, the city had the right to take charge and complete the work, and, if in doing so it should be compelled to pay more than the contract price, it could recover as damages the excess, but that in no event can the city claim to be damaged until it has actually completed the job and expended the money.

The facts germane to this proposition are that Bradshaw abandoned the contract; the city took charge of the work, expended thereon $2,152.60, but was unable, owing to lack of funds available for that purpose, to complete the work. The evidence showed, and the jury found, that based on the price of labor at Wolfe City at the time Bradshaw quit work, or within a reasonable time thereafter, it would have cost $3,000 to finish the dam according to the contract.

We cannot accept appellant's view; we do not think it was necessary for the city to complete the work and actually expend the money as a condition precedent to its right to recover damages. This identical question was decided in City of Kennett v. Katz Construction Co., 273 Mo. 279, 202 S. W. 558, 561. Suit was filed by the city against the contractor and its surety on a bond given for the faithful performance of a contract for the construction of a certain sewer line. On the measure of damages, the court said:

"Upon the contractor's failure to comply with its contract, the measure of the city's right of recovery was whatever amount might be shown by the best obtainable evidence was necessary in excess of the contract price to complete the work in accordance with the obligation. * * * To make the city whole it may upon a satisfactory showing, recover whatever amount is

necessary in excess of the contract price to complete the work after its abandonment by the contractor. Proof of the performance by the city of the uncompleted work does not constitute a condition precedent to its right of recovery. King v. Nichols & Shepard, 53 Minn. 453, 55 N. W. 604; Cincinnati, etc., Railway Co. v. Village of Carthage, 36 Ohio St. 631; City of Sherman v. Connor & Oliver, 88 Tex. loc. cit. 42, 29 S. W. 1053 [1057]." Page on Contracts, vol. 6, § 3215.

7. The appellant Bradshaw, in his appeal against the city, presents for review the action of the court in overruling his plea of privilege, also his contention that the change in the dimension work, heretofore discussed, was unauthorized, and that the court applied an incorrect measure of damages. These questions have heretofore been discussed and determined adversely to these contentions.

Having fully considered all assignments and propositions urged by appellant Bradshaw, and finding them without merit, they are overruled.

[8] 8. In concluding its brief, the casualty company suggests three propositions not found among the points or propositions on which its appeal is predicated, as required by rule 30 for the Courts of Civil Appeals. These suggestions are:

First. That the court erred in allowing the bank interest at the rate of 6 per cent. per annum from August 15, 1924, the date of its payment of the overdue claims; the contention being that, these laborers and materialmen could not have collected interest from any date prior to January 1, 1925, on the theory that their claims were "open accounts," and that the provision for interest prescribed by article 5070 (4977, 4978), Revised Statutes 1925, must control.

Second. Complaint is made that the court erred in rendering judgment for A. A. Humphrey for $95.55, for the same reasons set out as errors committed by the court in rendering judgment in favor of the bank and the city.

Third. That the judgment rendered in favor of the city is in excess of the amount sued for, and that the aggregate judgment in favor of the city, the bank, and Humphrey is in excess of the amount of liability fixed in the bond.

For the reason that the brief does not comply with rule 30, these suggested errors will not be adjudicated. However, if we felt at liberty to pass on the questions, appellant's contentions could not be sustained for the following reason:

As to the question of interest, the claims on which the bank intervened are not open accounts, and the statute referred to is not applicable. Judge Stayton, in McCamant v. Batsell, 59 Tex. 363, 367, 368, defined the word "account" used in the statute as follows:

"As used in the statutes of this state, in act referred to, we believe that the word 'account' is used in its popular sense, rather than in a technical sense, and that it applies to transactions between persons in which, by sale upon the one side and purchase upon the other, the title to personal property passes from the one to the other, and the relation of debtor and creditor is thereby created by general course of dealing."

To the same effect, see the recent case of McDaniel v. National Steam Laundry, 112 Tex. 54, 244 S. W. 135.

As to the suggested error in rendering judgment in favor of Humphrey, this, if considered, would be overruled for reasons stated in overruling similar contentions as to alleged errors committed in favor of the bank and the city.

The contention with reference to the vice in the judgment would be overruled for the reason that, while the judgment deals somewhat in circumlocution and probably contains surplusage, on final analysis it will be found that it is not subject to the criticism. While the court did adjudge that the city recover $2,842.75, an amount in excess of the sum sued for, that the bank recover $3,800, that Humphrey recover $95.55, the aggregate being in excess of the company's liability as fixed in the bond, yet these recitations are immediately followed by specific directions that the money belonging to the city on deposit in the appellee bank, to wit, $3,800, be applied first to the discharge of the sum found in favor of the city, thus extinguishing whatever amount was found in its favor, and that the remainder be applied towards the payment of the amount adjudged in favor of the bank; the net result being that no judgment was rendered for the city, no execution was authorized in its favor, and the bank recovered only $2,842.75, and Humphrey $95.55. There was no issue between the city and the bank. The pleadings and proof fully authorized the judgment, and no harm could possibly have resulted to appellant from the matters suggested. For these reasons, if we felt at liberty to consider the suggestions as propositions, which we cannot do under the rule, they would be overruled.

We have considered every assignment and proposition urged by appellants, and, finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

### On Rehearing.

In subdivision 8 of the original opinion filed in this cause, attention was called to the failure of appellant the casualty company to comply with rule 30, in that three propositions urged in the concluding part of its brief were not set out as points or propositions on which its appeal was predicated, and for that reason were not adjudicated.

[9] In its motion for rehearing, the casualty company, among other things, insists that, one of these propositions—that is, the one that involves its complaint that the judgment rendered in favor of the city of Wolfe City

was in excess of the amount sued for, and that the aggregate of the judgments in favor of the city, the bank, and Humphrey exceeded the amount of its liability ($5,000) as fixed in the bond—presented fundamental error and should have been considered by this court, although not presented as one of the propositions on which the appeal was predicated.

After reconsidering this phase of the subject, we are inclined to agree with appellant that the proposition does present a matter which, if error, is fundamental and should be adjudicated. Appellant's contention in regard to this matter is fairly reflected in the following excerpt from its motion for rehearing:

"The city of Wolfe City, in its pleading (Second Amended Original Petition, Tr. p. 13), asked for judgment against the defendants for the sum of $1,222.80.

"The court rendered judgment in its favor against the defendants (appellants here) for the sum of $2,842.75. (Tr. pp. 140, 141). The court then proceeded to credit the amount for which it had rendered judgment in favor of the city with the $3,800 which the city had on deposit with the First State Bank, and Judge Looney says: 'The net result being that no judgment was rendered for the city and no execution authorized in its favor.'

"The court in rendering judgment, as above stated, applied this $3,800 to the liquidation of the judgment for $2,842.75 which it had rendered against the defendants in favor of the city. This left a balance of $957.25 to apply as a credit on the judgment of $3,800 with interest which it rendered in favor of the First State Bank against the defendants, leaving a judgment in favor of the bank against the defendants of $2,842.75.

"Had the court rendered judgment in accordance with the prayer of the plaintiff for $1,222.80, and then applied the $3,800 to the satisfaction of the same, it would have left a balance of $2,577.20 to be applied as a credit upon the $3,800 with interest which it rendered judgment for in favor of the First State Bank, which would have left a net judgment in favor of the bank against these defendants of $1,222.-80, instead of $2,842.75—a difference of $1,622.15 against the appellants in this case.

"Furthermore, by what judicial sleight of hand the district court reached out its arm and appropriated the $3,800 belonging to the city on deposit in the bank for any purpose we do not understand. This $3,800 was not before the court. It had no jurisdiction over the same. The city of Wolfe City had not brought it before the court and prayed for judgment for that amount against the bank. The bank had not brought it before the court, admitting the same to be due the city, and paying the same into the registry of the court for such use as the court might adjudge."

Unless we have entirely misconceived the record in this case, a complete answer to appellant's position is that the fund $3,800, disposed of by the court, belonged to neither Bradshaw nor to his surety, the casualty company, but was money the city of Wolfe City had on deposit with the bank.

[10] The court made findings to the effect that, if Bradshaw had performed his contract obligations, the work would have cost the city only $12,790.25, whereas, because of his dereliction, it would cost $15,633, and in this way the conclusion was reached that the city was damaged, and entitled to recover, the sum of $2,842.75. It is true this sum is in excess of the amount sued for by the city; but, as we view the matter, this is a finding rather than an adjudication. Whatever error was committed was rendered harmless, so far as appellant is concerned, by the direction that the city's money on deposit with the bank be used to satisfy the sum found in favor of the city. Thus appellant was relieved from the payment of any sum whatever to the city, also the balance of this fund, to wit, $957.25, was applied as a credit on the amount found in favor of the bank, thus reducing its judgment to $2,842.75, whereas, but for this credit, it would have been rendered against appellant for the sum of $3,800.

If Bradshaw or the casualty company had owned or possessed the right to have this money applied to the satisfaction of the claim of the city, they would have the right to object to its use for the payment of any amount in excess of the sum for which the city, under its pleadings, could have obtained judgment, to wit, the sum of $1,222.80. But, as neither owned the fund, nor asserted any right to control its distribution, they are in no position to complain of the action of the court, certainly in view of the fact that when the "court reached its arm and appropriated the $3,800 belonging to the city on deposit in the bank" appellant's liability was thereby materially reduced.

[11] The court was under no compulsion, so far as the record discloses, to disturb or dispose of this fund in any manner, but, moved evidently by a sense of justice developed from the evidence, did in fact assume the authority to direct its application. If this had not been done, in view of the ascertained facts of the case, judgment would have gone against appellant for the full amount of the bond, to wit, $5,000, instead of for $2,842.75 in favor of the bank, and $95.55 in favor of A. A. Humphrey.

The only parties who could have complained, to wit, the city and the bank, make no complaint, and appellants the beneficiaries of the order of court are in no position to complain.

Having duly considered the motions filed by appellants for rehearing, and finding no reason to disturb the judgment heretofore rendered, they are overruled.

Overruled.